IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 21-233-1 |
| | : | |
| DANIEL DURAN | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                            **July 19, 2022**

Daniel Duran admitted defrauding hundreds of thousands of dollars from elderly citizens. We sentenced him to twenty-eight months in prison less than nine months ago. Mr. Duran asked his warden to transfer him to home confinement in March 2022. The Bureau of Prisons first granted his request but denied it last month. Mr. Duran now moves for compassionate release requesting we order the Bureau of Prisons to transfer him to home confinement consistent with their first decision or reduce his sentence to time served. We cannot grant either request. We lack authority to order the Bureau of Prisons to transfer him to home confinement. Mr. Duran fails to show extraordinary and compelling reasons warrant a reduction in his sentence. The sentencing factors set by Congress weigh against reducing his sentence today even if he showed extraordinary and compelling reasons. We deny Mr. Duran's motion for compassionate release without prejudice.

### I.      Background

The United States Attorney filed an information charging Daniel Duran with six counts of mail fraud.[1] He pleaded guilty on June 28, 2021.[2] He admitted to participating in an elder fraud scheme by phoning elderly victims, posing as their loved one or loved one's lawyers, and soliciting money from the victims by telling them tragedy struck and their loved one needed help.[3]  He

participated in a scheme to instruct the victims to send the money through the mail at addresses in our District.[4]

We sentenced Mr. Duran to twenty-eight months imprisonment, followed by three years of supervised release on October 28, 2021.[5] Mr. Duran began serving his sentence at United States Penitentiary, Lewisburg on November 29, 2021.[6] USP Lewisburg has 1,118 inmates.[7] As of July 19, 2022, there are zero confirmed positive inmate cases and zero staff cases of COVID-19 at USP Lewisburg.[8] Consistent with the Bureau of Prisons's efforts to control the spread of COVID-19, 1,131 inmates and 293 staff at USP Lewisburg have received at least two doses of the COVID-19 vaccine.[9]

We reviewed Mr. Duran's medical records.[10] He is obese with a body mass index between thirty-four and thirty-four point nine (thirty-four point nine as of December 21, 2022).[11] He has Type-2 diabetes, high blood pressure, and high cholesterol.[12] Mr. Duran's medical records indicate he gets headaches upon exertion, but prison medical provider Dr. Kevin Pigos attributes this to Mr. Duran's high blood pressure.[13] Mr. Duran received the first two doses of the Pfizer COVID-19 vaccine and will receive his booster shot next month.[14]

Mr. Duran submitted a B-9 Request for Administrative Remedy to the Bureau of Prisons requesting transfer to home confinement under the Coronavirus AID, Relief, and Economic Security ("CARES") Act on March 23, 2022.[15] The warden at USP Lewisburg granted his request for transfer to home confinement on March 31, 2022 after deeming him "medically vulnerable

with numerous factors."[16] But the Central Office of the Bureau of Prisons then denied his request on June 9, 2022.[17]

## II.   Analysis

Mr. Duran now moves for compassionate release. He alleges receiving no further information from the Bureau of Prisons after the warden granted his request for home confinement on March 31, 2022.[18] He asserts his health conditions place him at high risk for COVID-19 and asks us either to order the Bureau of Prisons to move him to home confinement or to reduce his sentence to time served.[19] The United States responded to Mr. Duran's motion for compassionate release arguing Mr. Duran's motion should be denied because he does not present an extraordinary and compelling reason for release given his age, vaccination status, time served, and the Bureau of Prisons's adequate management of his health risk factors.[20]

Congress allows us to grant compassionate release if Mr. Duran: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;"[21] (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[22] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[23] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[24] Mr. Duran "bears the burden of proving that extraordinary and compelling reasons exist."[25]

A.      **Mr. Duran fails to show extraordinary and compelling reasons warrant a reduction in his sentence.**

Mr. Duran argues he meets extraordinary and compelling reasons for a sentence reduction because of his medical conditions and the risk of COVID-19 and because the Bureau of Prisons previously determined he is eligible for home confinement but later changed its mind. The United States disagrees, arguing neither constitutes extraordinary and compelling reasons. We agree with the United States.

1.  **Mr. Duran's medical conditions and fear of COVID-19 do not constitute extraordinary and compelling reasons for a reduction in his sentence.**

It is by now well-settled "the existence of COVID-19 cannot alone justify compassionate release."[26] It is also well-settled COVID-19 vaccinations "are highly effective at preventing infection and . . . at reducing the severity of symptoms" from COVID-19 and its presently known variants.[27] COVID-19 may constitute an extraordinary and compelling reason for release only if a movant shows he is "particularly susceptible to serious illness or death" from contracting COVID-19, "usually as a result of one or more underlying comorbidities."[28] Mr. Duran must show "he is unable to receive or benefit from a vaccine."[29] The proliferation of vaccines throughout the Bureau of Prisons means compassionate release motions based on COVID-19 "generally lack merit."[30] "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[31] And receiving the vaccine reduces the health risks associated with other health conditions as they relate to COVID-19.[32]

Mr. Duran's health issues and his fear of COVID-19 affecting him "badly" do not constitute extraordinary and compelling reasons for compassionate release. Mr. Duran's medical records confirm he is obese and has Type-2 diabetes, high blood pressure, and high cholesterol.[33]

He argues he is at high risk for COVID-19 and worries it will affect him "badly" because of these conditions.[34] Three of the conditions—diabetes, hypertension, and obesity—place him at higher risk of getting very sick from COVID-19, according to the Centers for Disease Control.[35] But Mr. Duran received two doses of Pfizer's COVID-19 vaccine in February 2022 and has a booster vaccine scheduled for August 23, 2022.[36] No inmates or staff at USP Lewisburg have a confirmed case of COVID-19 as of July 19, 2022. [37] The Facility provided at least two doses of the COVID-19 vaccine to 1,131 incarcerated persons.[38] Mr. Duran's two doses of the vaccine and scheduled booster next month reduce the health risks associated with his diabetes, obesity, and hypertension should he contract COVID-19.

Mr. Duran fails to meet his burden to show he cannot benefit from the efficacy of the vaccine, or he is still highly susceptible to COVID-19 due to his medical conditions despite his vaccination status.  We find no extraordinary and compelling reasons for compassionate release.

2. **The Bureau of Prisons's decision to grant Mr. Duran's request for home confinement does not constitute and extraordinary and compelling reason for a reduction in his sentence.**

Mr. Duran also appears to argue he meets extraordinary and compelling reasons for a sentence reduction because the Bureau of Prisons determined he is eligible for transfer to home confinement under the CARES Act but has not yet transferred him. He argues extraordinary and compelling reasons exist based on the Bureau determining he is "appropriate for home confinement placement under the CARES Act and will be recommended for placement."[39] We have no authority to review the Bureau of Prisons's decisions under the CARES Act on a motion for compassionate release, nor do we have the authority to order the Bureau of Prisons to transfer Mr. Duran to home confinement when the Bureau of Prisons has granted but not acted on Mr.

Duran's transfer request.[40] And we are mindful the Bureau of Prisons later denied Mr. Duran's request approximately two months after granting it.[41]

We have broad discretion in whether to grant a compassionate release motion. We may consider a variety of sources in determining "extraordinary and compelling" reasons including the text of the statute, dictionary definitions, and the Sentencing Commission's policy statement among others.[42] We located no authority finding the Bureau of Prisons's decision finding relief warranted under the CARES Act conclusively establishes extraordinary and compelling reasons for a sentence modification when reviewing a motion for compassionate release. Nor has Mr. Duran provided authority. The standard and relief requested under the CARES Act is different than the standard we use in reviewing requests for compassionate relief.[43] We have no basis to conclude the Bureau's decision to preliminarily grant, but later rescind, Mr. Duran's transfer request conclusively establishes extraordinary and compelling reasons to reduce his sentence.

**B.      Even if Mr. Duran showed extraordinary and compelling reasons, the sentencing factors do not weigh in favor of a reduction of his sentence.**

Congress allows us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[44] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[45] Congress in section 3553(a) requires us to consider, among other things, the nature and circumstances of Mr. Duran's offenses and his history and characteristics; the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and the need for the sentence imposed including to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.[46]

Mr. Duran pleaded guilty to mail fraud and is serving twenty-eight months in the custody of the Bureau of Prisons.[47] He preyed upon vulnerable people to commit his crimes for his financial gain. We considered the factors Congress set forth in section 3553(a) when we sentenced him a little less than nine months ago. Mr. Duran served approximately eight months of his twenty-eight-month sentence. We consider the Bureau of Prisons's preliminary grant of Mr. Duran's request for home confinement, but the grant does not change our consideration of the section 3553(a) factors now. His time presently served is insufficient to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment for his offense, to afford adequate deterrence to criminal conduct, and to protect the public from his further crimes.[48] We commend Mr. Duran for registering no disciplinary infractions and participating in a drug abuse program during his time served and for creating "a robust plan for re-entry with a place to live and employment."[49] But these efforts do not warrant a change in our analysis of the section 3553(a) factors. Mr. Duran's sentence of twenty-eight-months is still sufficient but no greater than necessary to accomplish the goals of sentencing.

### III.        Conclusion

We deny Mr. Duran's motion for compassionate release and his request to order the Bureau of Prisons to transfer him to home confinement.

---

[1] ECF Doc. No. 1.

[2] ECF Doc. Nos. 14, 23 Mr. Duran also waived his right to an indictment. ECF Doc. No. 11.

[3] ECF Doc. No. 1.

[4] *Id.*

[5] ECF Doc. No. 44 at 3.

[6] ECF Doc. No. 45 at 1.

[7] *USP Lewisburg*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lew/ (last visited July 19, 2022).

[8] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 15, 2022). One inmate has died from the virus since the beginning of the pandemic. *Id.* 321 inmates and 171 staff have recovered from the virus. *Id.* USP Lewisburg is at "Level 2" operations to contain the spread of COVID-19. *USP Lewisburg*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lew/ (last visited July 19, 2022); *BOP COVID-19 Operational Levels*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (explaining modified operation levels) (last visited July 19, 2022).

[9] *COVID-19 Coronavirus*, Federal Bureau of Prisons, *supra* n.8.

[10] ECF Doc. No. 48.

[11] ECF Doc. No. 48 at 35.

[12] *Id*. at 5, 48. Mr. Duran is prescribed aspirin, atorvastatin, glipizide, ibuprofen, lisinopril, and metformin for his conditions. *Id.* at 52–53.

[13] *Id.* at 6, 38–39.

[14] *Id.* at 38 (third dose scheduled for August 23, 2022), 50 (indicating first dose received February 4, 2022 and second dose received February 24, 2022); *see also* ECF Doc. No. 47 at 4.

[15] ECF Doc. No. 47 at 3; ECF Doc. No. 45 at 1–3.

[16] ECF Doc. No. 47 at 3; ECF Doc. No. 45 at 3.

[17] ECF Doc. No. 47 at 3.

[18] ECF Doc. No. 45 at 1.

[19] *Id*.

[20] ECF Doc. No. 47.

[21] Our Court of Appeals requires strict compliance with the exhaustion requirement. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Mr. Duran tells us he requested home confinement under the CARES Act, which the Warden granted and the Central Office of the Bureau of Prisons later denied. He remains incarcerated. The United States concedes Mr. Duran exhausted his administrative remedies. ECF Doc. No. 47 at 3. We agree.

[22] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[23] *Andrews*, 12 F.4th at 259–60.

[24] 18 U.S.C. § 3582(c)(1)(A)(i).

[25] *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[26] *United States v. Singh*, 525 F. Supp. 3d 543, 546 (M.D. Pa. 2021) (quoting *Raia*, 954 F.3d at 597); *see also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

[27] *United States v. Johnson*, No. 18-578-1, 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022); *see also Rivers v. Jamison,* No. 21-1409, 2022 WL 2806542 (M.D. Pa. July 18, 2022) (reviewing motion for reconsideration regarding denial of habeas petition but finding "[v]accination is also highly effective at preventing illness, hospitalization, or death from Omicron variant"); *United States v. Gatson*, No. 13-705, 2022 WL 1269785, at *2 (D.N.J. Apr. 28, 2022) (vaccines effective against "Delta and other variants"); *United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness.") (and compiling cases).

[28] *Singh*, 525 F. Supp. 3d at 546.

[29] *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

[30] *United States v. Reed*, No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021).

[31] *Broadfield*, 5 F.4th at 803.

[32] *See United States v. Thomas*, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) ("The District Court appropriately recognized that Thomas's vaccination reduced the health risks he relied on in support of his motion.").

[33] ECF Doc. No. 48 at 5, 48.

[34] ECF Doc. No. 45 at 1.

[35] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 19, 2022) (listing the following conditions: cancer; chronic kidney disease; chronic liver disease; chronic lung diseases; cystic fibrosis; dementia or other neurological conditions; diabetes type 1 or 2; disabilities, such as down syndrome; heart conditions, such as hypertension; HIV; being in an immunocompromised state; mental health conditions; obesity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and, tuberculosis).

[36] ECF Doc. No. 48 at 38, 50.

[37] *COVID-19 Coronavirus*, Federal Bureau of Prisons, *supra* n.8.

[38] *Id*.

[39] ECF Doc. No. 45 at 1.

[40] *See United States v. Aguibi*, 858 F. App''x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (the Bureau of Prisons has the sole authority to place a prisoner on home confinement); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) (agreeing with the district court judge "whether to transfer an inmate to home confinement is a decision within the exclusive discretion" of the Bureau of Prisons); *United States v. Milchin*, No. 17-284, 2022 WL 196279, at *1 n.1 (E.D. Pa. Jan. 21, 2022) (same); *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (the CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief. Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'").

[41] ECF Doc. No. 47 at 3.

[42] *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

[43] *See, e.g.*, *United States v. Kirkham*, No. 18-30019, 2021 WL 238860, at *4 (C.D. Ill. Jan. 25, 2021) (court rejecting exhaustion prong for compassionate release met when defendant requested relief from the Warden under the CARES Act because "both the statutory requirements to be considered in evaluating a request for either early release to home confinement under the CARES Act or compassionate release under 18 U.S.C. § 3582(c)(1)(A) are different, as is the nature of the relief requested.").

[44] 18 U.S.C. § 3582(c)(1)(A)(i).

[45] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *6 (W.D. Pa. Dec. 9, 2021) (further citation omitted).

[46] Section 3553(a) provides in relevant part:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . .

    (5) any pertinent policy statement – (A) issued by the Sentencing Commission …; and (B) that … is in effect on the date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

. . .

18 U.S.C. § 3553(a).

[47] ECF Doc. No. 44 at 3.

[48] *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").

[49] ECF Doc. No. 45 at 1.